IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CHE PEAK, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT AND DEMAND FOR** |
| | ) | **JURY TRIAL** |
| FAMILY DOLLAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, CHE PEAK, by and through his attorneys, and for his cause of action against the Defendant hereby states the following:

### PARTIES-VENUE-JURISDICTION

1. Plaintiff Che Peak (hereinafter referred to as "Peak") is an African-American male citizen of the United States of America, and at all relevant times alleged herein, was a resident of Omaha, Douglas County, Nebraska.

2. Defendant Family Dollar, Inc. (hereinafter referred to as "Family Dollar") is a North Carolina corporation that is authorized to conduct business in Nebraska and at all times relevant, was doing business in Omaha, Douglas County, Nebraska.

3. This Court has original jurisdiction over claims arising under Federal law. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331.

4. Venue is appropriate in this District under 28 U.S.C. §§1391(b) and (c).

5. On or about April 18, 2018, less than 90 days prior to the filing of this Complaint, the U.S. Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue on charge number 32E-2017-00460.

1

**FACTUAL BACKGROUND**

6.     Peak worked for Family Dollar beginning on March 21, 2016 as an Assistant Manager at the retail store located at 30th and Newport in Omaha, Douglas County Nebraska.

7.     Peak was hired by Store Manager, Marlene (Marty) VanMiddlecoop. Marty hired Peak as her 1st Assistant Manager with a pay rate of $11.50 an hour. Upon hiring Peak, Marty said Peak would be trained to be a Store Manager so that she would be able to go on vacation and he could move up in the company. Peak was told by District Manager, Jeff, that assistant managers could be promoted to Store Manager after six months of satisfactory performance.

8.     Within a few months of hire, Marty assigned Peak to review applications and conduct interviews due to his prior work experience in human resources. Peak had also completed all of his training except for in the areas of scheduling and camera operation.

9.     During his six month review, Peak received a raise in his pay to $12.00 upon recommendation of Marty. Peak discussed with Nate his desire to be considered for a Store Manager position.

10.    In or about August 2016, Jeff was replaced with a new District Manager, Raphael Piche.

11.    In or about September 2016, Marty resigned her position as Store Manager. That same day, Peak told Piche that he was being trained by Marty for a store manager position and he would like to apply for the vacancy. Piche told Peak that he "didn't know him" and that a younger manager from the 16th Street store would come over to replace Marty. Piche instructed Peak to give his password and personnel number to Kevin, another assistant manager from 30th and Sprague, because he would be serving as the Holding Manager until a new Store manager was established. Peak told Piche that giving his password and personnel number to another

person was against company policy and that company policy provided that Peak should be designated as the Holding Manager in the interim. Piche ignored Peak's complaints.

12. In late September 2016, Terrance was placed in the position of Store Manager.

13. On November 10, 2016, Peak was robbed at gun point while working for Defendant. Peak requested worker's compensation benefits and accommodations in the form of time off to cope and get treatment for the anxiety, depression and post-traumatic stress disorder related to the robbery. Defendant denied both of his requests.

14. On November 20, 2016, Peak was in the store working while another employee was robbed at gun point. Peak requested worker's compensation benefits and accommodations in the form of time off to cope and get treatment for the anxiety, depression and post-traumatic stress disorder related to the robbery. Defendant initially denied both requests. In January 2017, Shannon, District Trainer, gave Peak the forms and contact information for their workers' compensation insurance company.

15. On January 13, 2017, Terrance resigned his position as Store Manager. Peak told Piche that he was interested in the position of Store Manager. Piche told Peak that he was not ready and that he already had someone else in mind. Peak requested any training that Piche thought would make him "ready" for the position and Piche denied his request. Piche hired Brittney, a white female, under the age of forty, for the Store Manager position that Peak sought. Peak also requested to Piche that he be placed in the position of Holding Manager. Piche placed Becky, a white female, under the age of forty, into the position instead of Peak. Becky asked Peak why Piche didn't put him in the position and Peak responded that he was the wrong sex, age, color and race for Piche, or Defendant's upper management to promote him.

16. On January 16, 2017, Peak showed up to work and the store was closed. Piche had notified all employees but Peak that he had decided to close the store due to inclement weather. When Peak inquired as to why he was not notified, Piche claimed that he didn't have Peak's number even thought Peak had just texted him just days before that.

17. During the inventory week of January 2017, Peak complained directly to Piche that he was not being promoted, trained or treated like other employees because of his race, color, sex and age. Peak complained that the younger white females were getting treated better than he was. Piche denied Peak's allegations.

18. In late January 2017, Peak complained to Corporate Human Resources that he was being discriminated against because of his race, color, sex and age. Peak was told that Regional Vice President, Zebulan Banghart would contact him because his complaints were "store-level" problems. Peak never heard from Banghart in response to his complaint.

19. On February 13, 2017, Peak asked one of the cashiers, Key Fondel, to return to her register to ring up customers. Fondel responded with, "nigger, you ain't my boss." Peak contacted Piche and reported to him what was said and that it was a discriminatory remark. Piche told Peak to be the "bigger person about it." Peak also left a voice message for Banghart about the incident as well.

20. On February 20, 2017, Peak made a discrimination complaint about Fondel and Piche to Corporate Human Resources. Peak was told that Banghart would follow up with him by phone. Peak never received any communications from Banghart thereafter.

21. After Peak's second complaint to Corporate Human Resources, Piche retaliated against Peak by assigning him more work with unrealistic deadlines and inferior assignments.

Piche also retaliated against Peak by scheduling him to work undesirable shifts and refusing to accommodate his need for time off due to his disability.

22. In early March 2017, Peak contacted Corporate Human Resources to complain again about Piche's discrimination and retaliation. The human resources representative told Peak that since it had already happened, there was nothing they could do about it.

23. Peak was constructively discharged on March 14, 2017 when he gave his resignation because of the discrimination and retaliation by Defendant.

24. Peak's performance was satisfactory throughout his employment.

25. At the time of his separation, Peak was earning approximately $12.00 per hour and working approximately 40 hours per week. As of the date of this filing, Peak's lost wages resulting from Defendant's wrongful conduct are approximately $33,120 and are continuing. As part of his compensation, Peak also received employment benefits in an amount that is currently unknown to Peak and will be subject to further discovery.

26. As a result of Defendant's wrongful conduct, Peak suffered compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## COUNT I

## RACE/COLOR DISCRIMINATION

## 42 U.S.C. §2000e

27. Plaintiff hereby incorporates paragraphs 1 through 26 as if fully set forth herein and states:

28. Defendant discriminated against Plaintiff with respect to terms and conditions of his employment on the basis of race and/or color in violation of Title VII by treating him differently than similarly-situated co-workers who were Caucasian and/or white.

29. Plaintiff suffered adverse action, including but not limited to disparate working conditions, unequal pay, disciplinary action, failure to promote and termination of employment.

30. Plaintiff's race and/or color were a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

31. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

32. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNT II

## RACE DISCRIMINATION

## 42 U.S.C. § 1981

33. Plaintiff hereby incorporates by reference paragraphs 1 through 32 and states:

34. Defendant discriminated against Plaintiff on the basis of his race in violation of 42 U.S.C. § 1981 by subjecting him to disparate treatment in the terms, privileges and conditions of his employment.

35. Plaintiff suffered adverse action, including but not limited disparate working conditions, unequal pay, disciplinary action, failure to promote and termination of employment.

36. Plaintiff's race was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

37. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

38. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNT III

## DISABILITY DISCRIMINATION

### 42 .S.C. §§12101 et seq. ("ADA")

39. Plaintiff hereby incorporates paragraphs 1 through 38 as if fully set forth herein and states:

40. Defendants are and were at all times material an "employer" within the meaning of under 42 U.S.C §12111.

41. Plaintiff is and was disabled within the meaning of the ADA, as amended.

42. Defendants regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

43. At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of his major life activities and major bodily functions.

44. At all times relevant, Plaintiff was able to perform the essential functions of his job, with or without reasonable accommodation.

45. Defendants discriminated against Plaintiff because of his disability and altered a term, condition and/or privilege of his employment, including but not limited to harassing Plaintiff about his disability and discharge of his employment.

46. Defendants failed to accommodate Plaintiff's disability in violation of the ADA.

47. Defendants failed to engage in good faith in an interactive process with Plaintiff to assist him in accommodating his disability in violation of the ADA.

48. Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

49. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendants are subject to punitive damages.

50. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT IV

### AGE DISCRIMINATION

### 29 U.S.C. §§621 et seq.

51. Plaintiff hereby incorporates paragraphs 1 through 50 as if fully set forth herein and states:

52. At all times relevant, Plaintiff was over the age of 40.

53. Defendant discriminated against Plaintiff with respect to the terms and conditions of his employment, failed to promote him and terminated his employment.

54. Plaintiff's age was a motivating factor in Defendant's actions.

55. Plaintiff was qualified for his position at the time of his termination.

56. Other similarly situated persons that were younger than 40 were promoted, not disciplined and/or terminated for similar conduct, and Plaintiff was replaced by another individual under the age of 40.

57. The unlawful employment practices complained of above were willful and intentional, and Defendant knew and showed reckless disregard for the fact that its conduct was prohibited by Federal law.

58. As a result of Defendant's acts and omissions, Plaintiff has in the past, and will in the future, suffer injuries and damages, including, but not limited to, mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT V

## GENDER DISCRIMINATION

## 42 .S.C. §§2000(e) et seq.

59. Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth herein and states:

60. Defendant discriminated against Plaintiff with respect to terms and conditions of his employment on the basis of his gender in violation of the Title VII of the Civil Rights Act of 1964, as Amended ("Title VII"), by treating him differently than similarly-situated female employees.

61. Plaintiff suffered adverse action, including but not limited to subjecting him job performance to higher scrutiny than others, not selecting him for training and promotion and constructive discharge of his employment.

62. Plaintiff's sex was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

63. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

64. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNT VI

## RETALIATION

### (Title VII and ADEA)

65. Plaintiff hereby incorporates paragraphs 1 through 64 as if fully set forth herein and states:

66. During his employment, Plaintiff engaged in protected activity, including but not limited to making internal complaints of race, color, sex and age discrimination.

67. Defendant took adverse employment action against Plaintiff, including but not limited to assigning him inferior work, subjecting his performance to higher scrutiny, disciplining him, failure to promote him and terminating his employment.

68. There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse action against him.

69. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

70. As a result of Defendant's retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## **DAMAGES**

71. Plaintiff hereby incorporates by reference paragraphs 1 through 70 and states:

72. As a result of Defendant's wrongful conduct, Peak has suffered damages and seeks the following relief:

   a. Back pay and lost benefits to the time of trial;

   b. Front pay including retirement and other benefits;

   c. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

   d. Punitive damages for defendants' actual malice or reckless indifference to Plaintiff's federally protected rights;

   e. Attorney's fees, expert witness fees and other reasonable costs; and,

   f. Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff Che Peak demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for all his general, special and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

### JURY DEMAND

Plaintiff hereby requests a trial by jury, in Douglas County, Nebraska.

Dated this 17th day of July, 2018.

CHE PEAK, Plaintiff

BY: s/ Jennifer Turco Meyer
Jennifer Turco Meyer, #23760
Of Dyer Law, P.C., LLO
10730 Pacific Street, #111
Omaha, Nebraska 68114
(402) 393-7529
(402) 391-2289 facsimile
Jennifer@dyerlaw.com
Attorneys for Plaintiff